Date signed April 18, 2008



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| **In Re:**<br><br>**Parsons 4E, LLC,**<br><br>     **Debtor.** | **Case No. 07-10598PM**<br>**Chapter 11** |
| **In Re:**<br><br>**4Energy, LLC,**<br><br>     **Debtor.** | **Case No. 06-11288PM**<br>**Chapter 11**<br><br>**Jointly administered under**<br>**Case No. 07-10598PM** |

**MEMORANDUM OF DECISION**

These jointly-administered cases are before the court on two motions – one filed by the Office of the United States Trustee ("UST") under 11 U.S.C. § 1112 to dismiss or convert the cases and the other filed by Mathon Fund LLC ("Mathon") under 11 U.S.C. § 1104(a) for the appointment of a Chapter 11 trustee that is joined in by Amazon Venture Capital, LLC ("Amazon"). Amazon filed a Proof of Claim in the case of Parsons 4E, LLC ("Parsons") in the sum of $593,845.20 stating that it is secured by coal leases and coal. Mathon filed two Proofs of Claim in the Parsons' case – one as the holder of a 7% ownership interest in Parsons and the other as the holder of a unsecured claim without priority in the sum of $7,000,000.00 plus interest and attorneys' fees. Mathon filed a Proof of Claim as the holder of a secured claim, also in the amount of $7,000,000.00, in the companion case of 4Energy LLC ("4Energy").

For the reasons that follow, the court will grant the motion for the appointment of a Chapter 11 trustee and deny the UST's motion to convert or dismiss these cases.

At the time of filing of the 4Energy case, 4Energy was scheduled as the owner of a railroad loadout facility for coal located in Clay County, Kentucky. Following the filing of a motion by Hope Industries, LLC ("Hope Industries"), 4Energy, Hope Industries and Mount Vernon Financial Holdings, Inc. ("Mt. Vernon") entered into a Stipulation and Consent Order that provided for Hope Industries obtaining relief from the automatic stay of 11 U.S.C. § 362(a) if certain sums were not paid to Hope Industries and Mount Vernon within 70 days of the entry of the order. These payments were not made. An order was entered January 10, 2007, granting Mount Vernon relief from the automatic stay of 11 U.S.C. § 362(a) enabling it to exercise its rights to foreclose upon the property. The court understands that a foreclosure has taken place and 4Energy no longer owns the facility.

The operating reports filed by these Debtors (UST's Exhibits #2-#29) reflect that during the pendency of the bankruptcy cases, neither has earned one dollar. As explained by the Debtors' authorized agent, Frank L. Zarrelli ("Zarrelli"), in an Affidavit filed in support of 4Energy's opposition to the UST's motion to dismiss or convert (#109-2, Case No. 06-11288PM), Parsons mines coal and 4Energy transports the product. Zarrelli affirmed in that Affidavit filed on March 2, 2007, that "the transport of coal from Parsons 4E mining operations alone, [4Energy] will generate revenue of not less than $40,000 per month in the next four months, and will generate between $160,000 to $320,000 per month towards the end of calendar year 2007[.]" After giving great weight to this representation, the court denied the UST's motion in the 4Energy case.

Looking solely at the record of these Debtors, these cases are dead in the water. In similar condition is "Wolford Trust"– an entity listed on the Amended Statement of Financial Affairs filed in the Parsons case as a 46.5% member along with 2Energy, Inc. (46.5%) and Mathon (7%). The Trust appears to be out of existence, and no party reports any recent contact with it.

In a desperate effort to create grounds for opposition to the motions, at 9:04 p.m. on the night before the April 16, 2008, hearing on the motions, the Debtors filed a Joint Plan of Reorganization and Disclosure Statement. These documents are deeply flawed and not worthy

of serious consideration. The Plan lacks the required liquidation analysis. There is no discussion of the existence of guarantors of various obligations, a fact that was also omitted from Parsons' Schedule H. The status of the leases is not described adequately. There is an allusion to a $2.5 million Letter of Intent on page five of the Disclosure Statement without any description of the provider. The Plan speaks of using the loadout facility that has been the subject of foreclosure. There are numerous typographical errors and sections missing, such as Section V. of the Disclosure Statement "Summary of Debtors' Chapter 11 Plan" that is promised on page two, but never delivered.

The cornerstone of the Debtors' Plan rests upon an entity known as Fossil Resources, Inc. ("Fossil"). This entity is designated to execute the Debtors' plan to mine the coal. From pages seven through nine of the Disclosure Statement, it is apparent that the driving force behind the Debtors' operations, such as they are, is Fossil. Fossil is said to have advanced $80,000.00 to maintain leases on what is described as the Flatwoods property and $8,000.00 to maintain leases on the Doug Bowling property. It allegedly spent $13,640.00 on reclamation issues; paid $2,500.00 of a $25,000.00 bill to an engineer, who now is employed by Mathon; spent $102,500.00 for legal fees, $100,000.00 of which was said to have been paid to the Debtors' counsel, the Rotbert Law Firm, and the rest to another firm for representation before the Department of Natural Resources; and deposited $200,000.00 with a mining contractor. If these advances were meant as loans for the Debtors, they all lacked notice and court approval. Of particular concern to the court is the payment of $100,000.00 to the Debtors' counsel. None of these payments are disclosed on the monthly reports filed with the Office of the United States Trustee. All that is shown regarding counsel's charges is a bill for $10,000.00 incurred in March 2006 that is unpaid. The payment of fees by Fossil to counsel for the Debtors creates an impermissible conflict of interest. His duty is to his clients. His clients are likewise fiduciary, debtors-in- possession. This situation is intolerable. Having said this, it can be argued credibly that the actions by Fossil benefitted the estate. It is unfortunate that its good work was done under cover.

However, while the court finds ample cause for the conversion of these cases, including the failure to pay taxes incurred after the entry of the Order of Relief, it does not appear that the

interests of any interested party are served by conversion of these cases to cases under Chapter 7. The court believes that all would be served better by the appointment of a Chapter 11 trustee.

While 11 U.S.C. § 704(a) provides for the possibility of court authorization for a Chapter 7 trustee to operate these businesses, the court agrees with counsel for Mathon that from a "marketing" standpoint it would be better to keep these cases in a reorganization mode. In so doing, it is readily apparent that despite the lack of progress by the Debtors, that the remaining intangible assets belonging to Parsons have enough value to awake the interest of at least two parties – Mathon and Fossil.

In due course, it may well turn out that the efforts of the Debtors to woo Fossil will result in its making a proposal that is acceptable to all. In the unique circumstances of these cases, Fossil might be considered an interested party. However, to be on the safe side, Fossil might consider the purchase of Proofs of Claim to secure the necessary standing to participate fully in these cases. With such standing, Fossil could file an improved plan in the nature of what was filed by the Debtors on the eve of this hearing.

Of a certainty is the fact that the orderly disposition of the assets available will produce the best result for all. It may emerge that Fossil can accomplish directly what it sought to accomplish indirectly.

These are not ordinary cases for a panel trustee. The coal industry is not one prevalent in this area. It may turn out that the appropriate individual for appointment is a person located in Kentucky with mining experience. The selection of the trustee must be made as required by 11 U.S.C. § 1104(d) after consultation with parties in interest. The trustee, once selected, might urge that the better venue for these cases is in the United States Bankruptcy Court for the Eastern District of Kentucky. But, that is an issue for another day.

Appropriate orders will be entered.

cc: Debtors
   Debtors' Counsel
   United States Trustee
   All Creditors
   All Parties Requesting Notice

**End of Memorandum of Decision**